UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| SHAWN DEFOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 5:22-cv-00318-LCB |
| | ) |
| C.C.S. GARBAGE SERVICE, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant C.C.S. Garbage Service, Inc.'s Motion to Dismiss. (Doc. 6). The parties have fully briefed the motion and it is ripe for review. For the reasons that follow, C.C.S.'s motion to dismiss is **DENIED**.

## BACKGROUND

C.C.S. provides garbage collection services for Limestone County, Alabama.[1] Defoe began working for C.C.S. in 2015 as a "slinger" on the back of a garbage truck.[2] C.C.S. had "about 29 employees" and "9-10 trucks."[3] In an unrelated incident, C.C.S.'s owner, Gatlin,[4] fired and rehired Defoe in September 2020.[5]

---

[1] (Doc. 1 ¶ 4).
[2] *Id.* ¶¶ 5-6.
[3] *Id.* ¶ 8.
[4] The mononymous Gatlin's first name does not appear in the complaint or anywhere in the briefing on this motion.
[5] (Doc. 1 ¶¶ 10-15).

1

Upon learning that C.C.S. received a federal Paycheck Protection Program ("PPP") loan, Defoe searched online for more information about C.C.S.'s PPP application.[6] He found that C.C.S. received $224,000 in April 2020 for payroll expenses, and claimed it had 37 employees on its application.[7] Defoe became suspicious that C.C.S. did not use the funds for payroll expenses, because C.C.S. did not experience any business disruptions, and it made several large capital expenditures around the time of the loan.[8] Additionally, Defoe believed C.C.S. had just 29 employees, despite claiming it had 37 on its application.[9] After his research, Defoe was convinced there was trickery afoot.

Deciding to take action, Defoe told his co-workers at C.C.S. that he planned to report the company to the government.[10] On January 4, 2022, he went one step further and posted his findings on Facebook.[11] In that post, he shared that he believed C.C.S. misused the PPP funds.[12] The same day, an unnamed co-worker told Gatlin that Defoe planned to report C.C.S. to the government.[13] The next morning, January 5, 2022, Stuart Gatlin, Gatlin's son and assistant at C.C.S., fired Defoe.[14]

---

[6] *Id.* ¶¶ 16-18.
[7] *Id.* ¶ 19.
[8] *Id.* ¶¶ 7, 20-21, 23-24.
[9] *Id.* ¶ 22.
[10] *Id.* ¶ 25.
[11] *Id.* ¶ 26-27.
[12] *Id.*
[13] *Id.* ¶ 29.
[14] *Id.* ¶¶ 30-32.

About one month later, on March 10, 2022, Defoe filed his complaint.[15] The complaint advances just one claim: his discharge from C.C.S. was unlawful retaliation for protected activity under the False Claims Act.[16] On April 11, 2022, C.C.S. filed this motion to dismiss under Rule 12(b)(6).[17]

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must include enough facts to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than a "formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. International Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility

---

[15] (Doc. 1).
[16] *Id.* at 5-6.
[17] (Doc. 6).

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

When reviewing a Rule 12(b)(6) motion to dismiss, a court must "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 Fed. Appx. 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2011)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible on its face, the claims must be dismissed. *Twombly*, 550 U.S. at 556, 570.

## DISCUSSION

C.C.S. moves to dismiss Defoe's complaint for two reasons. First, C.C.S. contends the complaint fails to meet the pleading requirements under Rule 8(a)(2). Second, C.C.S. asserts that Defoe's complaint does not state a claim for retaliation because the factual allegations do not show that he engaged in protected activity. The Court disagrees on both points. Because C.C.S. argues the wrong pleading standard applies to the complaint, and because the Court finds that the complaint alleges facts showing Defoe engaged in protected activity, C.C.S.'s motion fails.

## I. The complaint conforms with the pleading requirements of Rule 8(a)(2).

C.C.S. first argues that Defoe's complaint does not conform with Rule 8(a)(2) because it does not show an FCA violation. (Doc. 7 at 3-4). Despite cabining its argument under Rule 8(a)(2), C.C.S. asserts that the complaint must meet the special heightened pleading standard for fraud under Rule 9(b). *Id.* This argument misses the mark for two reasons.

First, C.C.S.'s argument is apparently based on the premise that Defoe must plead a substantive false claim FCA violation. But Defoe's only claim is for retaliatory discharge under 31 U.S.C. § 3730(h). (Doc. 1 at 5-6). Meaning that Defoe *does not* claim a standard false claim FCA violation. That is, Defoe's only claim is for retaliation, not fraud. And this Circuit's law is clear that under the FCA, a "retaliation claim d[oes] not depend on allegations of fraud," so the "complaint only

need[s] 'a short and plain statement of the claim showing that [the plaintiff is] entitled to relief.'" *United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1304 (11th Cir. 2010). Thus, because the complaint's only claim is for retaliation, the special pleading standards for fraud do not apply.

C.C.S.'s mistaken premise reveals an even more fundamental error. As best the Court can tell, C.C.S. avers that in order to state a claim for retaliation, Defoe must also include allegations that would state a claim for a false claim FCA violation. But the two causes of action are separate and distinct. *See Sanchez*, 596 F.3d at 1304. In other words, C.C.S. argues that Defoe must allege facts supporting a cause of action not at issue to establish the cause of action that is at issue. Put simply, there is no requirement to do so under the FCA.

Second, C.C.S. contends, at length, that Defoe's factual allegations are rough guesses and speculation. (Docs. 7 at 3-4; 10 at 2-3). It appears that C.C.S. is really arguing that proof of the allegations is required at this stage. Or, at least, that Defoe must prove some sort of basis for his allegations. C.C.S. asserts that Defoe "simply disputes of [*sic*] the number of employees that C.C.S. employs without submitting any accompanying documentation or further proof with his Complaint." (Doc. 7 at 4). C.C.S. misstates the burdens and standards at the motion to dismiss stage. Frankly, a plaintiff is not required to provide evidence or otherwise prove their factual allegations when defending a 12(b)(6). The Court assumes that all well

6

pleaded factual allegations are true. *Twombly*, 550 U.S. at 556. It does not matter where the allegations came from. Arguing the allegations' veracity or evidentiary support comes at the summary judgment stage, not on a 12(b)(6).

Ultimately, C.C.S.'s first main argument is not relevant to its motion. Defoe does not claim a false claim FCA violation, so the fraud heightened pleading standard does not apply. And because the Court assumes all factual allegations are true without evidence or proof, C.C.S.'s arguments about speculation are more appropriate for summary judgment. Therefore, C.C.S. is not entitled to dismissal on this issue.

## II. The complaint alleges sufficient facts showing Defoe engaged in FCA protected activity.

Substantively, C.C.S. argues that the complaint does not a state a claim for retaliation under the FCA because the factual allegations do not show that Defoe engaged in protected activity. The Court disagrees.

The FCA's retaliation provision is found at 31 U.S.C. § 3730(h), which provides:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent, or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

§ 3730(h)(1). Courts have derived three elements from the provision's language for an FCA retaliation claim: (1) the plaintiff engaged in protected conduct; (2) the employer knew of the plaintiff's protected conduct; and (3) the employer took adverse action against the plaintiff because of the protected conduct. *See, e.g., Lord v. Univ. of Mia.*, 2021 WL 5327788 at *6 (S.D. Fla. Nov. 16, 2021).

Similarly, courts have derived two distinct forms of protected activity: (1) acts "in furtherance of an action" under the FCA; and (2) "efforts to stop 1 or more violations" of the FCA. *See, e.g., Hickman v. Spirit of Athens Ala., Inc.*, 985 F.3d 1284, 1288 (11th Cir. 2021). Relevant here, as explained below, is "in furtherance of an action" conduct. The FCA protects activity when an FCA suit is a "distinct possibility". *Hickman*, 985 F.3d at 1288-90. An FCA suit is a distinct possibility when:

> [A]n employee's actions, as alleged in the complaint, are sufficient to support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a *qui tam* action by the employee, then the complaint states a claim for retaliatory discharge under § 3730(h).

*Sanchez*, 596 F.3d at 1304.

C.C.S. first argues that protected activity under the FCA must be based on an objectively reasonable belief of fraud on the government. (Doc. 7 at 5). But C.C.S. cites no authority for this apparently fundamental and necessary condition to a retaliation claim. The only case that C.C.S. cites in support of that proposition,

8

*Holifield v. Reno*, 115 F.3d 1555 (11th Cir. 1997), addresses Title VII. Then, C.C.S. essentially repeats its arguments that Defoe did not meet the fraud heightened pleading requirements. (Doc. 7 at 5-6). But, again, his claim is not for fraud.

Next, C.C.S. argues that Defoe was not in a position within the company to observe any alleged fraud firsthand, or to stop any alleged fraud from taking place. (Doc. 7 at 6). C.C.S. is apparently arguing that the second protected activity category— "efforts to stop 1 or more violations" of the FCA—is not applicable here. The Court agrees. The complaint does not contain factual allegations supporting that kind of protected activity, most obviously because Defoe did not become aware of the alleged fraud until after it was complete. Defoe cannot possibly have made efforts to stop an FCA violation when his knowledge of the violation is entirely after the fact. However, C.C.S. does not address the other distinct protected activity category: acts "in furtherance of" an FCA action.

The remaining arguments in C.C.S.'s brief largely confuse the issues and mix together retaliation elements. C.C.S. contends that Defoe's Facebook post would not put an employer on notice. *Id.* Be that as it may, this argument puts the cart before the horse. Protected activity and an employer's knowledge of that activity are related but distinct elements. Proving conduct does not itself require proving the employer's knowledge, just as proving the employer's knowledge does not itself require proving conduct. While the two are inevitably linked, they remain separate elements that a

9

plaintiff must independently satisfy. C.C.S. attempts to combine the elements and argue that a plaintiff cannot prove conduct without proving knowledge.

C.C.S. then contends that the conversation between the unnamed co-worker and Gatlin, where Gatlin learned of Defoe's plan to report C.C.S. to the government for fraud, was "one between another employee and C.C.S., not between Plaintiff and C.C.S., thus that is not an action or activity in which Plaintiff participated." *Id.* This argument suffers from the same flaw. As best the Court can tell, C.C.S. attempts to argue that Defoe did not engage in protected activity—the first element of a retaliation claim—because the alleged conduct is not how C.C.S. became aware of his plan to report fraud to the government—the second element. Again, C.C.S. attempts to combine the elements of retaliation and argues that Defoe must prove conduct by proving knowledge.

C.C.S.'s reply more directly addresses the actual issue of protected activity. But the argument is still insufficient. C.C.S. asserts that the complaint does not establish that Defoe "sought to prevent at least one violation of the FCA." (Doc. 10 at 4). Again, the Court agrees. As explained above, the complaint does not contain sufficient factual allegations to establish Defoe engaged in that kind of activity. But, again, there are two distinct categories under the FCA. And C.C.S. fails to address the first: activity "in furtherance of an action" under the FCA. That category is the relevant one here.

While the briefs are not directly on point, the Court finds that the complaint does contain sufficient facts showing that Defoe engaged in protected activity. The well-pleaded factual allegations show that after becoming suspicious that C.C.S. was not using PPP funds for payroll expenses, Defoe conducted research and discovered that C.C.S. reported more employees than it actually had on its PPP application. (Doc. 1 ¶¶ 16-24). Defoe told his co-workers that he planned to report C.C.S. to the government. *Id.* ¶ 25. Then, Defoe published his findings of suspected fraud on Facebook. *Id.* ¶¶ 26-27. And C.C.S. learned from an employee that Defoe planned to report the company to the government. *Id.* ¶ 29. Clearly, it is reasonable to conclude "that the employer could have feared being reported to the government . . . by the employee". *Sanchez*, 596 F.3d at 1304. Accepting the allegations in the complaint as true, that exact fear drove C.C.S. to terminate Defoe's employment. Therefore, "the complaint states a claim for retaliatory discharge under § 3730(h)." *Id.*

The parties do not purport to argue the knowledge element in their briefs. But, as explained above, the parties implicate the element throughout their arguments. The Eleventh Circuit has provided that, in a retaliation claim, "[t]o establish the necessary causal connection . . . the plaintiff must show that the employer was at least aware of the protected activity." *Reynolds v. Winn-Dixie Raleigh, Inc.*, 620 Fed. Appx. 785, 792 (11th Cir. 2015). The court further clarified that the relevant

11

decision-maker in the company must be aware of the protected activity. *Id.* at 792-93.

C.C.S., in essence, makes two knowledge arguments. First, that the Facebook post would not have put C.C.S. on notice of Defoe's protected activity. (Doc. 7 at 6). Defoe stipulates the Facebook post does not satisfy the knowledge requirement. (Doc. 9 at 11-12). Second, C.C.S. contends that the conversation between the unnamed employee and Gatlin, where he learned of Defoe's plan to report C.C.S. to the government, "is not an action or activity in which Plaintiff participated." (Doc. 7 at 6). The Court explained above, in detail, the flaw in this argument. In short, it confuses the issues and attempts to combine distinct elements. Most importantly, the employer's knowledge does not need to come directly from the protected activity itself. The two elements are separate questions.

Even assuming that C.C.S. does challenge the knowledge element, the Court finds that the well-pleaded factual allegations support that C.C.S. was aware of Defoe's protected activity. Most obviously, an employee told Gatlin, C.C.S.'s owner, that Defoe planned to report the company to the government. (Doc. 1 ¶ 29. Stuart Gatlin, Gatlin's son and assistant, fired Defoe the next day. *Id.* ¶¶ 30-32. Importantly, Gatlin had previously fired Defoe in a separate incident. *Id.* ¶¶ 10-15. Meaning that Gatlin is the relevant decision-maker with authority to hire and fire employees. So, the facts as alleged show that the decision-maker and C.C.S.'s

owner—Gatlin—had personal knowledge that Defoe planned to report C.C.S. to the government for fraud. Clearly, "the employer was at least aware of the protected activity." *Reynolds*, 620 Fed. Appx. at 792.

To sum it up, the Court finds that the complaint contains sufficient factual allegations showing both that Defoe engaged in protected activity and that C.C.S. was aware of that protected activity. Therefore, the complaint states a valid claim for retaliation under the FCA.

## CONCLUSION

For the above reasons, the Court **DENIES** C.C.S.'s motion to dismiss. (Doc. 6).

**DONE** and **ORDERED** this June 15, 2022.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE